**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **DEMOCRACY CAPITAL CORP.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No. MJM-25-2083** |
| **v.** | * | |
| | * | |
| **ABACOS CAPITAL, LLC, *et al.*,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Democracy Capital Corporation ("Democracy" or "Plaintiff") commenced this action against Abacos Capital, LLC ("Abacos"), Mark Proulx ("Proulx"), William J. Militello ("Militello"), and Satinder Gill ("Gill"), alleging various state law claims concerning loans and other credit accommodations extended to Tessemae's LLC ("Tessemae's") by Plaintiff, and by Abacos, Proulx, Militello, and Gill. *See* ECF No. 2. Currently pending is a motion to dismiss joined by Abacos, Proulx, and Gill. *See* ECF Nos. 4 & 8. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025). For reasons explained below, the motion shall be granted in part and denied in part.

## I. BACKGROUND

### A. Procedural History

Democracy filed suit against Abacos, Proulx, Militello, and Gill in the Circuit Court of Maryland for Baltimore City. *See* ECF No. 2 ("Compl."). On June 30, 2025, Gill filed a notice of removal. ECF No. 1. On July 7, 2025, Gill and Proulx filed a motion to dismiss. ECF No. 4. On July 21, 2025, Abacos filed a motion to dismiss, incorporating by reference all the arguments made

1

in Gill and Proulx's motion. ECF No. 8. Democracy opposed both motions. *See* ECF Nos. 5 & 10.[1] On August 1, 2025, Gill, Proulx, and Abacos collectively filed a reply in support of their joint motion to dismiss. ECF No. 12.

### B. Factual Background

This lawsuit concerns loans and other credit accommodations extended to Tessemae's by Plaintiff, and by Abacos, Proulx, Militello, and Gill. *See* Compl. ¶¶ 1, 6–9.[2] Tessemae's is a Maryland limited liability company engaged in the sale of salad dressings, marinades, condiments, salad kits, and grab-and-go food items. *Id.* ¶ 1. It was founded in 2009 and experienced rapid growth. *Id.* ¶ 12. To finance its expansion, Tessemae's obtained loans and investments from various sources, including Defendants. *Id.* ¶ 13.

In November 2016, Defendants extended a series of unsecured loans to Tessemae's totaling $1,250,000 (the "Defendants' Loans"): Gill loaned $500,000 on November 4, 2016; Abacos loaned $250,000 on November 11; Proulx loaned $250,000 on November 20, 2016; and Militello loaned $250,000 on November 28. *Id.* ¶ 14(a)–(d). Each loan was evidenced by a promissory note requiring repayment in full by various dates in May 2017, and all were personally guaranteed by Tessemae's principal, Gregory Vetter ("Vetter"). *Id.* ¶¶ 14–15. Although Tessemae's made some interest payments, it ultimately defaulted and failed to repay the loans at maturity. *Id.* ¶ 16.

By early 2018, Tessemae's was experiencing significant cash-flow difficulties and had defaulted on obligations to multiple creditors, many of whom had initiated collection actions. *Id.* ¶ 17. These defaults included loans from Howard Bank (the "Howard Bank Loans"), which were

---

[1] In Democracy's opposition to Abacos's motion to dismiss, Democracy incorporates by reference its arguments made previously in opposition to Defendants' Gill and Proulx's motion to dismiss. *See* ECF No. 10 at 2.

[2] Abacos is a Virginia limited liability company, Proulx is a resident of New Jersey, and Militello and Gill are residents of Virginia. *See id.* ¶¶ 6–9.

secured by a first-priority lien on all of Tessemae's assets and thus senior to all other debt and equity interests, including Defendants' Loans. *Id.* ¶¶ 18–19.

After unsuccessful efforts to refinance the Howard Bank Loans, Tessemae's approached Democracy with a proposal that Democracy acquire and restructure the debt. *Id.* ¶ 20. Following negotiations, Democracy agreed to do so. *Id.* ¶ 21. As a condition, Democracy required Tessemae's creditors, including Defendants, to subordinate all existing and future indebtedness to the restructured Howard Bank Loans and any other debt owed to Democracy. *Id.* ¶ 22. The Howard Bank Loans had previously been modified on February 13, 2017. At that time, Howard Bank requested that certain creditors, including Defendants, execute subordination agreements. Although form agreements were prepared, Defendants initially declined to sign them. *Id.* ¶ 23.

By April 2018, it was apparent to all parties that, absent a restructuring, Tessemae's would likely cease operations or enter bankruptcy. *Id.* ¶ 24. Defendants, like other junior creditors, then agreed to subordinate their loans. *Id.* ¶ 25. On April 6, 2018, each Defendant signed a form Subordination Agreement, which Howard Bank countersigned on April 9, 2018 (the "Defendants' Subordination Agreements"). *Id.* ¶ 26. These agreements are attached as Exhibits A through D to the Complaint.

The Defendants' Subordination Agreements are identical. Under those agreements, all existing and future indebtedness owed to the "Lender" on the Howard Bank Loans (the "Senior Debt") was to be senior in all respects to the Defendants' Loans and any other indebtedness owed to Defendants by Tessemae's or Vetter (the "Subordinated Debt"). *Id.* ¶ 27. Defendants further agreed, among other things, not to demand or pursue payment on the Subordinated Debt until the Senior Debt was paid in full. Although the agreements permitted receipt of "regularly scheduled payments" absent notice of default on the Senior Debt, the Defendants' Loans had already matured

and were in default when the agreements were executed. *Id.* ¶ 28. The agreements also required Defendants to hold any payments received on the Subordinated Debt "in trust" for the Lender and to promptly remit those payments in the same form received. *Id.* ¶ 29. In addition, Defendants were prohibited from modifying or amending the loan documents without the Lender's prior written consent. *Id.* ¶ 30. Each agreement was executed "under seal." *Id.* ¶ 31.

The closing on Democracy's acquisition of the Howard Bank Loans occurred on April 10, 2018. *Id.* ¶ 32. At closing, Democracy received executed copies of the Defendants' Subordination Agreements and relied on them in consummating the transaction. *Id.* ¶ 34.

That same day, Democracy acquired, restructured, and consolidated the Howard Bank Loans into a single loan (the "Democracy Loan"). *Id.* ¶ 35. The Democracy Loan was evidenced by a Consolidated, Amended, and Restated Promissory Note in the original principal amount of $3,000,000 (the "Democracy Note"), along with related loan documents executed by Tessemae's and others for Democracy's benefit (collectively, the "Democracy Loan Documents"). *Id.* ¶ 36.

In connection with the transaction, Howard Bank executed a General Assignment of Loan Documents (the "Assignment"), assigning to Democracy all of its right, title, and interest in the loan documents related to the Howard Bank Loans, including the Defendants' Subordination Agreements, which were expressly referenced in the Assignment. *Id.* ¶ 38. A copy of the Assignment is attached as Exhibit E to the Complaint. The Subordination Agreements further provide that, upon any transfer or assignment of the Senior Debt, the agreements inure to the benefit of the transferee or assignee. *Id.* ¶ 39. Effective as of the Assignment, Democracy replaced Howard Bank as the "Lender" under the Defendants' Subordination Agreements. *Id.* ¶ 40.

From the inception of the Democracy Loan, Tessemae's failed to make full monthly interest payments and failed to provide required financial information. *Id.* ¶ 41. As a result of these defaults, Democracy began assessing default interest on July 1, 2019. *Id.* ¶ 42.

On September 25, 2019, without Democracy's consent, Defendants jointly filed suit against Tessemae's and Vetter in the Circuit Court of Maryland for Montgomery County (the "Montgomery County Case") to recover amounts allegedly due under the Defendants' Loans. *Id.* ¶ 46. The complaint alleged that the loans had been in default since May 2017 and sought judgments for the full outstanding balances. *Id.* ¶ 47. At that time, Defendants knew the Democracy Loan remained unpaid. *Id.* ¶ 48. Defendants joined Democracy as a party in the Montgomery County Case and sought a declaratory judgment regarding the scope and enforceability of the Subordination Agreements. *Id.* ¶ 49.

On February 21, 2020, Democracy accelerated the Democracy Loan and demanded payment in full. *Id.* ¶ 43. Tessemae's failed to satisfy its obligations. *Id.* ¶ 44.

In early April 2020, Democracy learned that Defendants had reached, or were attempting to reach, a settlement with Tessemae's and Vetter (the "Defendants' Settlement"). *Id.* ¶ 50. Defendants refused to confirm or disclose its terms. *Id.* After learning of the settlement, Democracy sent a letter reminding Defendants of their obligations under the Subordination Agreements, including their duty to remit any payments received, and demanded immediate turnover of such payments. *Id.* ¶ 51 (citing Exhibit F).

In June 2020, Democracy filed counterclaims in the Montgomery County Case to enforce its rights under the Subordination Agreements. *Id.* ¶ 52. In July 2020, Defendants moved to stay their claims against Tessemae's and Vetter pending consummation of the settlement. Democracy opposed the motion, which the court denied in September 2020. *Id.* ¶ 53. In October 2020,

Defendants voluntarily dismissed their claims against Tessemae's and Vetter with prejudice. The claims between the Defendants and Democracy were dismissed without prejudice and without adjudication. *Id.* ¶ 54.

On November 11, 2020, Democracy filed suit against Tessemae's and certain guarantors, including Vetter (the "Guarantors"), in the Circuit Court of Maryland for Baltimore County (the "Baltimore County Case") to recover amounts owed under the Democracy Loan. *Id.* ¶ 55. On January 25, 2024, Democracy obtained final judgments against Tessemae's and the Guarantors in the principal amount of $8,706,250 (the "Baltimore County Judgments"). *Id.* ¶ 56.

On February 1, 2023, Tessemae's filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Case"). *Id.* ¶ 57. Democracy filed a proof of claim for amounts owed under the Democracy Loan. *Id.* ¶ 58. The Bankruptcy Case was resolved in the summer of 2024 through confirmation of a plan of reorganization (the "Approved Bankruptcy Plan"), which granted Democracy an allowed claim of $16,233,760.77. *Id.* ¶ 59.

Although Democracy has received some payments under the Baltimore County Judgments and the Approved Bankruptcy Plan, a substantial portion of the debt remains outstanding. As of the filing of the Complaint, more than $10,000,000 remains unpaid. *Id.* ¶ 60.

In late 2024, in connection with a bankruptcy-related settlement, Tessemae's and Vetter disclosed for the first time details regarding Defendants' Settlement and related payments. *Id.* ¶ 61. This disclosure revealed that, in April 2020—while the Montgomery County Case was pending—Tessemae's agreed to pay Defendants $1,725,000 over six months (the "Settlement Payments"). *Id.* ¶ 62. According to the Complaint, these payments were not "regularly scheduled payments" under the original notes and were received after Defendants were notified of their obligations to remit such payments to Democracy. *Id.* As part of the Defendants' Settlement, the

6

parties modified the Defendants' Notes, increasing the aggregate principal from $1,250,000 to $1,725,000 (the "Amended Defendants' Notes"). *Id.* ¶ 63. Specifically, the Abacos, Proulx, and Militello notes were each increased from $250,000 to $345,000, and the Gill note was increased from $500,000 to $690,000. *Id.* The Amended Defendants' Notes provided for installment payments through October 1, 2020.

Plaintiff alleges, on information and belief, that Defendants received the full $1,725,000 in Settlement Payments before dismissing the Montgomery County Case in October 2020. *Id.* ¶ 65. Defendants neither held these payments in trust nor remitted them to Democracy. *Id.* ¶ 66.

## II.    STANDARD OF REVIEW

A motion to dismiss under Federal Rules of Civil Procedure Rule 12(b)(6) tests the sufficiency of the plaintiff's complaint. To survive such a motion, a complaint must satisfy Rule 8(a)(2) by providing a "short and plain statement of the claim showing that the pleader is entitled to relief." *View Point Med. Sys., LLC v. Athena Health, Inc.*, 9 F. Supp. 3d 588, 596 (D. Md. 2014) (citation omitted). A plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although detailed factual allegations are not required, the complaint must include enough factual matter to suggest a cognizable claim, even if recovery appears unlikely. *Twombly*, 550 U.S. at 555–56. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Id.* at 555. The complaint must contain sufficient factual allegations "to

raise a right to relief above the speculative level," and "[t]hreadbare recitals" or "naked assertions" without factual enhancement will not suffice. *Id.*; *Iqbal*, 556 U.S. at 678 (citation omitted).

In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). However, the court need not accept legal conclusions. *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019). Accordingly, the court separates legal conclusions from factual allegations, assumes the truth of the latter, and determines whether they plausibly establish liability. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012). Finally, review on a Rule 12(b)(6) motion is generally limited to the complaint, documents incorporated by reference, and exhibits attached to the complaint. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015).

## III.    DISCUSSION

### A.  Breach of Contract

In Count I of the Complaint, Plaintiff asserts a claim for Defendants' breach of the Subordination Agreements. "To be binding and enforceable, contracts ordinarily require consideration." *Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 661 (2003).

Defendants argue that the Subordination Agreements between them and Howard Bank are unenforceable because they are not supported by consideration. *See* ECF No. 4-1 at 14. Defendants contend that past actions cannot serve as valid consideration and, here, the Subordination Agreements were signed April 6, 2018, *after* the Howard Bank Loans were obtained and performed upon. *Id.* at 15. Therefore, Defendants argue, the Subordination Agreements lack consideration and are unenforceable.

Democracy argues that Defendants' contention ignores the Complaint's allegations regarding the circumstances surrounding execution of the Subordination Agreements. ECF No. 5 at 5. Specifically, Democracy alleges that, at the time the agreements were executed, the Howard Bank Loans were in default and Tessemae's was on the verge of bankruptcy. *Id.* According to the Complaint, Defendants understood that their unsecured loans would not be repaid unless another lender agreed to acquire and restructure the Howard Bank Loans. Democracy was willing to do so only on the condition that Defendants subordinate their claims. Defendants executed the Subordination Agreements to induce Democracy to proceed with the transaction, and Democracy did not acquire the Howard Bank Loans until 24 hours after all Defendants had signed. *See id.* (citing Compl. ¶¶ 24–26, 33–35). Therefore, Democracy argues, it provided consideration by acquiring and restructuring the Howard Bank Loans and extending additional credit to Tessemae's, thereby conferring a benefit on Defendants.

"Lack of consideration is clearly a generally applicable contract defense." *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 612 (4th Cir. 2013); *see also* Fed. R. Civ. P. 8(c)(1) (listing "failure of consideration" as an affirmative defense). And at the motion to dismiss stage, "a plaintiff is not obligated to present facts addressing affirmative defenses that a defendant may have." *Aegis Bus. Credit, LLC v. Brigade Holdings, Inc.*, Civ. No. AAQ-21-00668, 2022 WL 3716543, at *5 (D. Md. Aug. 29, 2022) (citing *CX Reinsurance Co. Ltd., v. Leader Realty Co.*, 219 F. Supp. 3d 542, 546 (4th Cir. 2016)); *see also Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (Rule 12(b)(6) motion "generally cannot reach the merits of an affirmative defense"). Rather, to state a claim for breach of contract, "a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant."

*Wells v. Pennrose Mgt. Co.*, 753 F. Supp. 3d 432, 440 (D. Md. 2024) (citations omitted); *see also*

*RRC Northeast, LLC v. BAA Maryland, Inc., Inc.*, 994 A.2d 430, 442 (Md. 2010).

Plaintiff satisfies that standard. The Complaint alleges that Plaintiff is the assignee of the Subordination Agreements executed by Howard Bank and Defendants. Those agreements—signed by Defendants with an effective date of February 13, 2017—provide that all existing and future indebtedness owed to the "Lender" on the Howard Bank Loans (the "Senior Debt") is senior in all respects to the Defendants' Loans and any other indebtedness owed to Defendants by Tessemae's or Vetter (the "Subordinated Debt"). Compl. ¶ 27. Defendants further agreed not to demand or pursue payment on the Subordinated Debt until the Senior Debt was paid in full. The Complaint alleges that Defendants materially breached these obligations by, among other things, pursuing collection efforts, modifying the loan terms without consent, accepting and retaining settlement payments, and failing to hold and remit those payments in trust for Plaintiff as required. *Id.* ¶ 75. Defendants' argument that the Complaint's allegation that they did not sign the Subordination Agreements until after Howard Bank provided loans to Tessemae's necessitates dismissal is unavailing. Defendants cite no case law to support the proposition that a Complaint need to anticipate an affirmative defense, nor is it clear from the face of the complaint that Defendants' apparently late performance rendered their Agreements with Howard Bank unenforceable for lack of consideration. In short, Plaintiff has adequately alleged that Defendants breached contractual obligations owed to it. These allegations are sufficient to sustain Count I.

### B. Statute of Limitations

Plaintiff brings claims for conversion, breach of fiduciary duty, and fraudulent concealment (Counts II, III, and IV, respectively) based on Defendants' receipt and retention of Settlement Payments from Tessemae's following the Montgomery County Case. Defendants argue that these

claims accrued in 2020 and are therefore barred by Maryland's three-year statute of limitations. *See* ECF No. 4-1 at 13, 26. Defendants further contend that the discovery rule does not apply because Plaintiff was aware of the existence of a settlement in 2020, even if it did not know the precise payment amounts until 2024. *See id*. at 21; ECF No. 12 at 7.

Plaintiff does not dispute that it had notice of a settlement in 2020. It argues, however, that awareness of the settlement's existence is not equivalent to knowledge of its terms or of any wrongful conduct. *See* ECF No. 5 at 12. Specifically, Plaintiff contends that it lacked notice that the settlement involved payments prohibited by the Subordination Agreements. Plaintiff also argues that it exercised reasonable diligence but could not have discovered the basis for its claims earlier because Defendants ignored its demand letters seeking information about any payments received. *See id.* According to Plaintiff, it first learned of the Settlement Payments in 2024, when Tessemae's disclosed relevant documents during the bankruptcy proceedings. Plaintiff therefore maintains that the discovery rule tolled the statute of limitations. *Id.*

As noted, affirmative defenses such as a statute of limitations are rarely appropriate for resolution at the motion to dismiss stage. *See Kline v. Hyundai Motor Am., Inc.*, 751 F. Supp. 3d 542, 564 (D. Md. 2024) (explaining that dismissal on statute of limitations grounds is appropriate only in the "relatively rare circumstances" where the complaint itself establishes the defense (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007))). Under Maryland's discovery rule, a claim accrues when the plaintiff knew or reasonably should have known of the wrong. *See Caruso Builder Belle Oak, LLC v. Sullivan*, 330 A.3d 666, 676 (Md. 2025). This requires "actual knowledge that is express cognition, or awareness implied from knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry[.]" *Poffenberger v. Risser*, 431 A.2d 677, 681 (Md. 1981) (citations omitted).

Here, the Complaint alleges that Plaintiff lacked knowledge of the alleged wrongful conduct—namely, Defendants' receipt and retention of Settlement Payments—until 2024. *See* Compl. ¶¶ 57–61. Although Plaintiff was aware in 2020 that Defendants had reached a settlement with Tessemae's, the Complaint supports a plausible inference that Plaintiff did not know, and could not have known through reasonable diligence, that the settlement involved payments made in violation of the Subordination Agreements. The alleged wrongdoing is not the existence of the settlement itself, but Defendants' alleged acceptance and retention of payments they were obligated to hold in trust and remit. The Complaint further alleges that Plaintiff sought information about any such payments through demand letters, but Defendants failed to respond. Compl. ¶ 51. Drawing all reasonable inferences in Plaintiff's favor, those allegations support the conclusion that Plaintiff exercised reasonable diligence yet was unable to discover the factual basis of its claims. Accepting these allegations as true, Plaintiffs' claims accrued in 2024 when it first learned of the Settlement Payments. Accordingly, Defendants' statute-of-limitations defense does not warrant dismissal at this stage.

## C. Breach of Fiduciary Duty

In Count III of the Complaint, Plaintiff asserts a claim for breach of fiduciary duty based on Defendants accepting and retaining payments they received from Tessemae's on Defendants' Loans, including Settlement Payments; failing to hold the payments in trust for Plaintiff's benefit, as required by the Subordination Agreements; and failing to inform Plaintiff about their receipt of payments and to remit the payments to Plaintiff.

Defendants argue that Plaintiff fails to state a claim for breach of fiduciary duty because the Complaint does not adequately allege the existence of a fiduciary relationship between the parties. ECF No. 4-1 at 28–29. Specifically, Defendants contend that a subordination agreement,

standing alone, does not create a fiduciary relationship but is instead a contractual arrangement establishing priority among creditors. *Id.* at 30. Although Defendants acknowledge that the Subordination Agreements require them to hold certain payments "in trust" for Democracy and to remit those payments, they argue that "the presence of these two words" is insufficient to create a fiduciary relationship. ECF No. 12 at 9.

Plaintiff responds that a fiduciary relationship may arise by agreement. ECF No. 5 at 15. According to Plaintiff, the Subordination Agreements expressly require Defendants to hold any payments received on the subordinated debt "in trust" for Democracy and to remit those payments "in precisely the form received." *See id.* at 15–16. Plaintiff contends that this language creates an express trust with respect to such payments, thereby giving rise to a fiduciary relationship.

Under Maryland law, a claim for breach of fiduciary duty requires the existence of a fiduciary relationship, a breach of the duty owed, and resulting damages. *See Plank v. Cherneski*, 231 A.2d 436, 466 (Md. 2020). In general, a fiduciary duty is "a duty to act for the benefit of another on matters within the scope of the parties' relationship." *Id.* at 467 (citing Restatement (Third) of Torts: Liab. For Econ. Harm § 16 cmt. a). A fiduciary relationship "may . . . arise from the terms of a contract[.]" *Id.* (quoting Third Restatement, § 16 cmt. a). However, Maryland courts are generally reluctant to impose fiduciary duties in arm's-length commercial transactions. *See Shay v. Stevens*, No. 0669 SEPT. TERM 2015, 2016 WL 2346734, at *9 (Md. App. Ct.  May 4, 2016) ("It is established under Maryland law that, within an arm's length transaction, no fiduciary relationship is created ordinarily.").

Here, the facts set forth in the Complaint support the existence of a fiduciary relationship—albeit a limited one. The Subordination Agreements, as described in the Complaint, require Defendants to hold certain payments "in trust" for Democracy and to remit those payments in the

form received. This language supports a reasonable inference that the parties intended to create a trust-like obligation with respect to those payments. And drawing all reasonable inferences in Plaintiff's favor at this stage, Defendants plausibly assumed fiduciary obligations with respect to any payments they received on the Subordinated Debt and breached those obligations in failing to remit the payments to Plaintiff. Accordingly, the Complaint states a plausible claim for breach of fiduciary duty, and Defendants are not entitled to dismissal of Count III.

### D. Fraudulent Concealment

In Count IV of the Complaint, Plaintiff asserts a claim for fraudulent concealment based on Defendants' failure to disclose actions they took to demand and collect payments in connection with Defendants' Loans, modifications made to Defendants' Loans, and payments they received from Tessemae's on Defendants' Loans.

Defendants argue that Plaintiff fails to state a claim for fraudulent concealment (Count IV) for several reasons. First, they contend that the Complaint does not satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See* ECF No. 4-1 at 17. Second, Defendants argue that the Complaint fails to allege that they owed Plaintiff any duty to disclose. *Id.* at 24. Finally, Defendants assert that the Complaint contains no allegations showing that Plaintiff relied on the alleged concealment to its detriment. *Id.* at 25; s*ee also* ECF No. 12 at 12 (arguing that the Complaint is "strikingly absent" of any such allegations).

Plaintiff responds that where the alleged fraud is based on concealment rather than affirmative misrepresentation, courts in the Fourth Circuit apply a more relaxed pleading standard. *See* ECF No. 5 at 17. Plaintiff contends that it satisfies this standard because the Complaint identifies the information Defendants allegedly failed to disclose and points to the Subordination Agreements, which purportedly required Defendants to disclose any payments received from

Tessemae's. *Id.* Plaintiff further argues that the Complaint pleads fraud with sufficient particularity by describing the information concealed, Defendants' alleged motive, Plaintiff's inability to take corrective action, and the resulting damages. *Id.* at 18. According to Plaintiff, these allegations provide Defendants with fair notice of the claims.

To state a claim for fraudulent concealment under Maryland law, a plaintiff must allege: (1) the defendant owed a duty to disclose a material fact or concealed a material fact with the intent to defraud; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result. *See Green v. H&R Block, Inc.*, 735 A.2d 1039, 1059 (Md. 1999). Claims sounding in fraud are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that the circumstances constituting fraud be stated with particularity. Although courts in this Circuit apply a somewhat relaxed standard to claims based on omission, a plaintiff must still plead a "baseline level of particularity" that rises above conclusory allegations. *Baltimore Flips Israel 2020 LLC v. Yosef*, 769 F. Supp. 3d 370, 401 (D. Md. 2025) (citing *Singh v. Lenovo (United States) Inc.*, 510 F. Supp. 3d 310, 326–27 (D. Md. 2021)).

Here, Count IV fails to state a claim for fraudulent concealment because the Complaint does not include enough facts to support a reasonable inference that Plaintiff took action in justifiable reliance on Defendants' alleged concealment. A fraudulent concealment claim cannot proceed where the plaintiff "details no actions taken to show that it relied on any concealment." *All-U-Need Temp. Servs., Inc. v. First Transit, Inc.*, Civ. No. DKC 09-3229, 2010 WL 2560089, at *4 (D. Md. June 18, 2010). The Complaint alleges only that Defendants' concealment "prevented [Plaintiff] from learning of the Defendants' actions and omissions." Compl. ¶ 98. In its

opposition, Plaintiff similarly argues that the alleged concealment deprived it of the ability to take "corrective action." ECF No. 5 at 18. But Plaintiff does not state in the Complaint that it took any action, entered into any transaction, or refrained from exercising any specific right or taking any action in reliance on Defendants' alleged concealment. The facts set forth in the Complaint do not satisfy the justifiable reliance element of a fraudulent concealment claim. *See EndoSurg Med., Inc. v. EndoMaster Med., Inc.*, 71 F. Supp. 3d 525, 556 (D. Md. 2014) (dismissing fraudulent concealment claim where Plaintiffs "failed to plead that they relied on [Defendant's] concealment and took action based on that reliance."); *Deckelbaum v. Cooter, Mangold, Tompert & Chapman, P.L.L.C,* 292 B.R. 536, 540 (D. Md. 2003) ("Plaintiff's Complaint and Opposition are devoid of any factual allegations from which it could be inferred that the estate or Trustee took any action in reasonable reliance on Defendants' concealment.").[3] Because Plaintiff fails to plead justifiable reliance with the particularity required by Rule 9(b), Count IV fails to state a plausible claim for relief and must be dismissed.

## IV.    ORDER

For the foregoing reasons, it is by the United States District Court for the District of Maryland hereby ORDERED that Defendants' Motions to Dismiss (ECF Nos. 4 & 8) are GRANTED in part and DENIED in part. The motions are GRANTED with respect to Count IV, which is DISMISSED without prejudice. The motions are DENIED in all other respects.

 3/31/26
Date

/S/
Matthew J. Maddox
United States District Judge

---

[3] Plaintiff's theory appears to be that Defendants' alleged concealment deprived it of the opportunity to respond to the concealed information—namely, the Settlement Payments—and that this lost opportunity constitutes detrimental reliance. Plaintiff, however, cites no authority for the proposition that the lack of knowledge (and thus the lack of opportunity to respond to the knowledge) equates to a particular, reliance-based action.